

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00528-CV

**IN THE INTEREST OF R.S.G.**, et al., Children

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2017PA01615
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Karen Angelini, Justice
    Rebeca C. Martinez, Justice
    Irene Rios, Justice

Delivered and Filed: December 12, 2018

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her children, R.S.G. and R.A.G.[1]  The only issue presented by Mother is whether the evidence is legally and factually sufficient to support the trial court's finding that termination was in the children's best interest.  We affirm the trial court's order.

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the mother as "Mother" and the children by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2). Also, we refer to the father of R.S.G. as B.G. and the father of R.A.G. as W.H.  *Id*.  The trial court's order terminates Mother's parental rights to R.S.G. and R.A.G., as well as the fathers' parental rights to their respective children, but only Mother appeals.

## BACKGROUND

On October 27, 2017, the Texas Department of Family and Protective Services ("Department") filed an amended petition to terminate parental rights.[2] In the supporting affidavit, Department caseworker David Cortez states the Department received a referral alleging negligent supervision, noting the family was homeless and living out of a car. The referral additionally alleged that when the family had been living in a home, W.H. discharged a weapon in the home while R.S.G. and another minor were present. This occurred prior to R.A.G.'s birth. The affidavit further alleged that drug and gang activity took place in the home. The affidavit noted R.A.G. was born on September 27, 2017.[3]

The trial court held a bench trial on July 23, 2018 and July 24, 2018, at which Mother appeared in person and testified on her own behalf. The trial court signed an order terminating Mother's parental rights to R.S.G. and R.A.G. on July 24, 2018.

## STANDARD OF REVIEW AND STATUTORY REQUIREMENTS

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found evidence of two predicate grounds to terminate Mother's parental

---

[2] The Department filed its original petition on July 21, 2017, naming only R.S.G. as a subject of the suit. Following R.A.G.'s birth, the Department filed the amended petition.

[3] R.A.G.'s birthdate is listed in the record as September 27, 2017. However, during the trial, the parties agreed his birthdate was October 27, 2017. Elsewhere, his birthdate is referenced as being July 27, 2017.

rights.[4] The trial court also found termination of Mother's parental rights was in the best interest of the child.

When reviewing the sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### BEST INTERESTS

In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Family Code section 263.307(b). *See* TEX. FAM. CODE ANN. § 263.307(b). We also apply the non-exhaustive *Holley* factors to our analysis.[5] *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A

---

[4] The trial court found evidence Mother "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child,[;] … [and] failed to comply with the provisions of a court order …[.]" *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (O).

[5] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id*.

## DISCUSSION

Mother contends the evidence is legally and factually insufficient to support the trial court's determination that termination of her parental rights is in R.S.G.'s and R.A.G.'s best interests.

Mother testified during the trial that she had two different jobs during the pendency of the case. Mother stated she took the second job to be closer to home, but admitted she was unemployed at the time of the trial. Mother testified she left the second job because she lost social assistance benefits when she was working. Mother further testified she had recently been searching for a job and had gone to interviews but had not yet found employment. At the time of the trial, Mother lived with her sister. According to Mother, her housing was stable because she was welcome to live with her sister for as long as necessary.

Mother testified she attended and completed parenting and domestic violence classes. Mother also testified regarding her relationship with her husband, W.H. According to Mother, she had not been involved in a relationship with W.H. since December 2017 and she had obtained two different restraining orders against W.H. On cross-examination, Mother acknowledged that she had reported to police that W.H.'s cousin carried a gun in her former home, which was discharged in the home. Mother also testified the cousin used illegal drugs in her home. However, Mother could "not recall" also reporting to police that W.H. was violent.

Josephine Chagolla, a teacher-counselor with American Indians, San Antonio Fatherhood Campaign, who counseled Mother once a week, testified Mother told her W.H. was violent. Chagolla also testified Mother admitted that she was having a hard time bonding with R.A.G. Chagolla admitted she was unaware of the Department's concerns because she had not been in contact with any Department caseworker with regard to Mother's case.

Former Department caseworker, Valerie Kelly, became involved in the underlying case in July 2017. Kelly testified she prepared Mother's service plan, which included psychological evaluation and parenting and domestic violence classes. According to Kelly, she made the referral for psychological evaluation in December 2017, but Mother did not complete the evaluation until May 2018. Kelly noted Mother completed parenting and domestic violence classes prior to undergoing psychological evaluation. Kelly testified Mother was given follow-up requirements following the evaluation, which included maintaining stable housing, taking part in individual counseling, and finding gainful employment. The psychological evaluation also resulted in the recommendation that Mother take part in continued parenting and domestic violence classes.

Kelly testified Mother engaged in individual counseling at Heart to Heart for at least a month but did not successfully complete the program. Kelly further testified Mother stated she attended additional parenting and domestic violence classes but did not provide proof that she did so. Kelly indicated that Mother did not demonstrate she learned anything in either class. Kelly indicated Mother's continued relationship with W.H. – even after attending the classes – caused concern. According to Kelly, Mother reported W.H. was violent, including during Mother's pregnancy with R.A.G. Further, Kelly testified that when R.S.G. made an outcry of sexual abuse against W.H., Mother stated she did not believe R.S.G. and insisted the incident did not occur. The Department presented evidence through Deputy Brandon Prader that Mother continued to visit W.H. in jail through mid-April 2018. Kelly testified Mother also allowed unauthorized contact between W.H. and the children by sneaking phone calls during parental visitation and then instructing R.S.G. to lie about the calls. *In re A.H.*, No. 04–15–00416–CV, 2015 WL 7565569, at *9 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op.) (noting parent's decision to remain in an abusive or inappropriate relationship as a factor supporting the trial court's best-interest determination).

- 5 -

Kelly described Mother's housing situation as "flip-flopping between different residences." Kelly testified Mother had not found stable housing and that the longest Mother stayed in one place during the pendency of the case was one month. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (a stable permanent home for a child is an important consideration). Kelly further testified Mother had not maintained stable employment. *In re J.R.W.*, 14-1200850-CV, 2013 WL 507325, at *9 (Tex. App.—Houston [14th Dist.] Feb. 12, 2013, pet. denied) ("A parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs.").

Department caseworker Delia Longoria, who became involved in the case in June 2018, testified that in the month she supervised the case, Mother did not complete all of her assigned services, including undergoing a psychiatric evaluation or engaging in individual therapy. *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (evidence that the appellant failed to comply with the court-ordered service plan supported the trial court's best-interest determination).

Longoria observed two parent-child visits during which Mother had very little interaction with R.S.G. Longoria testified Mother gave R.S.G. a tablet and then had little to no interaction with R.S.G. Longoria testified R.A.G. cried throughout the visits and could not be comforted by Mother. Longoria opined that Mother did not demonstrate effective parenting skills. Longoria further testified the children were placed in a foster-to-adopt placement. According to Longoria, the children are very comfortable with their foster parents and appear very bonded with their foster family. *In re J.D.*, 436 S.W.3d at 118 (factfinder may consider whether children have bonded with foster family and are well-cared for when children are too young to express their desires). Longoria specifically noted that R.A.G. is very calm with his foster mother. The children's foster mother also testified, indicating that R.S.G. was initially "withdrawn" and "behind" regarding "basic knowledge for a five-year-old." According to the foster mother, R.S.G. now is excelling in

language and math on her level and has learned basic hygiene such as cleansing herself and brushing her teeth. *See id.*

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re H.R.M.*, 209 S.W.3d at 108; *In re J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail the evidence if affirming a termination judgment).

Mother's sole issue on appeal is overruled.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's order terminating Mother's parental rights.

Irene Rios, Justice